```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                    CIVIL ACTION

v.                                          NO. CR 06-55

CHAD JAMES                                  SECTION "F"
```

ORDER AND REASONS

Before the Court is Chad James's motion to suppress evidence obtained from his apartment pursuant to a search warrant. The warrant was issued to the police based upon the fruits of a protective sweep conducted as part of James's arrest for a parole violation. On June 27, 2007, this Court heard oral argument and took the motion under submission. For the reasons that follow, the defendant's motion is DENIED.

I.

On January 12, 2006, Sgt. Jerry Kerr and Officer Jason Kent of the Thibodaux City Police Department presented themselves at James's apartment to execute a warrant for his arrest for a parole violation.[1] Upon arriving, the officers knocked on the apartment

---

[1] James was convicted of Attempted Possession with Intent to Distribute Cocaine in 1997, although testimony revealed that the arresting officers were not aware of James's underlying offense.

1

door, and, when James answered, the officers informed him of his parole violation and the arrest warrant.[2]  Initially, James seemed to be passive, requesting only permission to get dressed; he asked the officers to wait for him outside of the apartment while he did so.  The officers agreed to allow James to get dressed, but told him that he was already under arrest, and, therefore, they would have to accompany him inside.  James complied, and the officers followed him inside, at which point he then abruptly slammed shut another door that led into a living room.[3]  Once inside James's bedroom, the officers saw a shotgun in plain view, leaning against the wall.  Sgt. Kerr testified that they immediately became focused on their own safety and positioned themselves as James got dressed, physically placing themselves between James and the gun, to ensure that he could not reach the gun at any time.

When James finished getting dressed, he stepped into the hallway, and the officers attempted to handcuff him.  At that point, James unexpectedly stiffened in resistance and began to fight the police, first stiffening his arms to prevent the cuffing, and then violently punching and kicking both officers.  James

---

[2] Testimony revealed that Sgt. Kerr and Chad James had grown up in the same neighborhood and had known each other for approximately twenty years.

[3] Sgt. Kerr testified that his suspicion was aroused by the contrast between Mr. James's relaxed and friendly manner at the beginning of the conversation, and his discomfort and nervousness when he forcefully slammed shut the door to another inner room.

2

fought the officers with such force that they tumbled out of the apartment, down the stairwell, and into the street.  There, James managed to escape the clutches of the officers, but, instead of fleeing, he "turned around in the street ripped off his shirt and charged [them]."  Despite numerous baton blows to his legs, James continued to charge and attack both officers in turn, while screaming for someone to help him.[4]  Finally, James relented, and the officers convinced him to submit to the arrest.  Both officers sustained injuries during the encounter.

During the fight, one of the officers called for backup assistance.  As a backup unit arrived on the scene, the officers placed James in a cruiser.  Sgt. Kerr then re-entered the apartment and conducted a protective sweep "to secure the shotgun, and clear and secure the apartment."  In the course of the sweep, Sgt. Kerr noticed that the door to the inner room that was previously slammed shut by James had been knocked open, apparently during the struggle.[5]  Inside of that room, another door to a closet with a

---

[4] Sgt. Kerr testified that he was unsure whether James was calling to a specific person to help him or making a general cry for help, because no one else was on the street throughout most of the encounter.  He felt that others were still in James's apartment and that he was yelling to them for help.

[5] Sgt. Kerr testified that at the time of the sweep, he was uncertain whether the door had been knocked open during the altercation or whether it had been opened by someone else in the apartment.  Once he determined that no one else was in the apartment, he surmised in his official report that the door had been knocked open during the struggle to arrest James.

3

washer and dryer was open as well. There, on a shelf above the washer and dryer, Sgt. Kerr observed, but did not collect, a number of clear plastic bags containing a white powder substance. Once he was satisfied that the apartment was empty and access to the shotgun was not possible, Sgt. Kerr assigned another officer at the open door and immediately contacted the Narcotics Bureau of the Thibodaux Police Department.[6]

Based upon the observations and statements of Sgt. Kerr and Officer Kent, Thibodaux City Court Judge David Richard issued a search warrant for James's apartment. Thereafter, two detectives from the Thibodaux Police Department, James's parole officer, Stanley Rankins, and DEA Special Agent Larry Johnson searched the apartment.[7] They recovered from the apartment "approximately 14.7 grams of cocaine base, approximately 79 grams of cocaine hydrochloride, a digital scale, mixing agents . . . a plate and pot with cocaine residue . . . [and] approximately $5,114.00 in cash," along with the loaded shotgun.

James now contends that Sgt. Kerr's protective sweep was unlawful and that the search warrant issued by Judge Richard was

---

[6] Sgt. Kerr did not open drawers nor rifle through James's belongings during his sweep, but, rather, limited his search to a visual inspection of each room and the spaces within each room in which another person could have been hiding.

[7] Stanley Rankins had been notified by his office that James had been arrested for the parole violation. He was instructed to go to the scene to document any further parole violations.

tainted by the sweep. James requests that the fruits of the search executed pursuant to that warrant, the drugs and paraphernalia, be suppressed.[8] The defendant effectively asks this Court to find unreasonable an officer's protective sweep of a convicted felon's residence which immediately followed a violent struggle to arrest him, and in which a loaded weapon had been discovered in plain view. Given the deference owed to the judgment of arresting officers, and the inherent prudence of securing the residence under these circumstances, the Court finds instead that Sgt. Kerr's protective sweep was justified and appropriate under the Fourth Amendment.[9]

---

[8] James's motion specifically lists all recovered items other than the shotgun as the "fruits of the search" to be suppressed, presumably because the shotgun was discovered before any search occurred.

[9] In its opposition to the Motion to Suppress Evidence, the Government also presented three additional grounds upon which to oppose the motion, two of which were considered by the Court at oral argument: the "good faith" exception, under which an officer's reliance upon a legitimate search warrant exempts any evidence obtained from suppression under the exclusionary rule, if the warrant is subsequently invalidated, and the "inevitable discovery" exception, under which it argued that the narcotics would have been legitimately discovered by parole officer Stanley Rankins even without Sgt. Kerr's protective sweep during a home visit or a search. Because the Court finds that Sgt. Kerr's protective sweep comported with the Fourth Amendment, it is unnecessary for the Court to rule explicitly upon these issues. But if a substantive ruling upon them were necessary, the Court would likely favor the Government's position on the "good faith" exception. In this case, the officers' reliance upon the warrant was objectively reasonable, and the exclusionary rule's chief purpose of inhibiting police misconduct would not be served by suppressing the narcotics that were seemingly collected with prudence and caution by the officers from James's apartment. The

II.

A.

The sanctity of one's home is fiercely protected by the Fourth Amendment, and thus, police officers are generally required to obtain a warrant before entering and searching a residence. See Maryland v. Buie, 494 U.S. 325, 329 (1990). But there are exceptions, one being an officer's right to conduct a protective sweep. A protective sweep is defined as a "quick and limited search of the premises . . . conducted to protect the safety of police officers or others . . . [and] narrowly confined to a cursory visual inspection of those places in which a person may be hiding." Id. at 327. The Supreme Court has held that such a search should be upheld if the officer "'possessed a reasonable belief based on specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warranted the officer in believing that the area swept harbored an individual posing danger to the officer or others." Id. at 327 (quoting Michigan v. Long, 463 U.S. 1032, 1049-50 (1983)).

Any "obviously incriminating evidence" discovered during a

---

Court would not be persuaded, however, by the inevitable discovery exception, largely because the extent of a parole officer's authority to enter and search a parolee's residence in his absence or after his arrest is unclear under existing precedent. The likelihood that James's parole officer would have inevitably discovered any contraband in James's apartment through a home study or any other random visit is extremely speculative.

protective sweep is subject to seizure, as instructed by the plain view doctrine.  United States v. Waldrop, 404 F.3d 365, 369 (5th Cir. 2005).  The High Court has also instructed that a protective sweep incident to an arrest need not be supported by probable cause or reasonable suspicion, and may extend to "closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched."  Buie, 494 U.S. at 334.[10]

To determine the reasonableness of a protective sweep, courts must balance an individual's Fourth Amendment rights against the well-grounded concerns of investigating police officers, including their safety and that of others.  United States v. Gould, 364 F.3d 578, 583-84 (5th Cir. 2004).  The exception for protective sweeps also imposes two time limitations:  that a sweep span 1) "no longer than is necessary to dispel the reasonable suspicion of danger," and 2) "no longer than the police are justified in remaining on the premises."  Id. at 587.

The Fifth Circuit has recognized that "exigent circumstances"

---

[10] It is arguable, though not raised by the parties, that because the sweep was conducted incident to and near the site of the arrest, it did not require probable cause or reasonable suspicion.  See United States v. Charles, 469 F.3d 402, 405-06 (5th Cir. 2006) (holding that an officer's protective sweep of a storage unit following the arrest of a suspect nearby did not require probable cause or reasonable suspicion).  But because the arrest was finalized in the street after the defendant resisted arrest and attacked the officers, Sgt. Kerr had to re-enter the apartment to search and secure it.  This may exceed the Buie Court's exemption from reasonable suspicion for areas "immediately adjoining the place of arrest."

that justify a sweep include the possibility of evidence being removed from the scene, or the reasonable perception of danger to officers or citizens. United States v. Maldonado, 472 F.3d 388, 393 (5th Cir. 2006). The standard for determining the existence of an exigent circumstance is simply whether a "reasonable and prudent m[a]n standing in the shoes of the officer[]" would find the situation sufficiently dangerous to warrant a protective sweep. Id. (citing United States v. Rodea, 102 F.3d 1401, 1405 (5th Cir. 1996)). Courts must defer to the judgment of the officer if reasonable minds could differ as to the propriety of a search. Gould, 364 F.3d at 590-91 (quoting United States v. Howard, 106 F.3d 70, 76 (5th Cir. 1997)).

The Fifth Circuit has established as a guide a five-factor test for determining whether or not exigent circumstances justify a protective sweep:[11]

> (1) the degree of urgency involved and amount of time necessary to obtain a warrant; (2) the reasonable belief that contraband is about to be removed; (3) the possibility of danger to the police officers guarding the site of contraband while a search warrant is sought; (4) information indicating the possessors of the contraband are aware that the police are on their trail; and (5) the ready destructibility of the contraband and the knowledge that efforts to dispose of narcotics and to escape are characteristic behavior of persons engaged in narcotics traffic.

---

[11] These factors are never specifically discussed by the parties, but have informed the Court's analysis.

United States v. Rico, 51 F.3d 495, 500-01 (5th Cir. 1995).  In this case, the first factor favors the officers because they responded reasonably and in self-defense to a justifiable urgency to stabilize the situation and prevent any further injuries to themselves or anyone else.  As to the second factor, the shotgun was the only known item of "contraband" at the time of the sweep, and the officers reasonably believed that the weapon was in danger of being removed by whomever James called out to for help during the altercation.  The third factor weighs significantly in favor of the officers because they were aware that a weapon was present in the unsecured residence, which may have posed a danger to other officers or citizens.  The fourth factor is irrelevant here because it applies to suspects under surveillance.  Finally, because a weapon was at issue, rather than narcotics, the last factor is also inapposite to this case.

B.

James presented two principal arguments to support his contention that Sgt. Kerr's protective sweep fell short of these standards.  First, he asserts that the officers lacked any specific basis for concluding that another individual could have been hiding in the apartment.[12]  Secondly, James contends that Sgt.

---

[12] The defendant cites United States v. Watson, 273 F.3d 599, 603 (5th Cir. 2001), which states that "the mere presence of illegal drugs and weapons does not justify a protective sweep." The court ultimately held that officers who lacked a specific

9

Kerr's re-entry was unwarranted, because it exceeded what was necessary to "complete the arrest and depart the premises." Buie, 494 U.S. at 335. James contends that no exigent danger existed because he was already secured and placed in the police vehicle.[13]

The Government counters that Sgt. Kerr's re-entry was justified under the circumstances. In its opposition, the Government responds that a sweep may be appropriate even after an arrest has taken place. See United States v. Maldonado, 472 F.3d 388 (5th Cir. 2006); see also Gould, 364 F.3d at 593 (explaining that "officers [are] allowed 'to take reasonable steps to ensure their safety after, and while making, the arrest'") (quoting Buie, 494 U.S. at 334)). In Maldonado, agents arrested two suspects outside of a trailer and then conducted a protective sweep without any specific knowledge that anyone else was inside. Maldonado, 472 F.3d at 391-92.[14]  The Fifth Circuit held that the search was

---

basis for concluding that other dangerous accomplices were present in the house were still justified in conducting a protective sweep to alleviate this possibility.  The defense distinguishes the instant case from this decision by stating that the officers in Watson happened upon a drug deal under circumstances that suggested that other persons may be involved, while the situation at issue gave the officers no reason to suspect that dangerous accomplices were present.

[13] A protective sweep is unlawful if the officers created the exigent circumstances which justified it. United States v. Rico, 51 F.3d 495, 502 (5th Cir. 1995).

[14] Maldonado, the second suspect, had been hiding in the trailer, and was seen peeking out of the door.  He assured the police that there were no others in the trailer, but officers reasonably suspected others in the trailer and performed the

legitimate, given the agents' proximity to the trailer and reasonable fear for their safety.  Id. at 394.[15]  The Government argues that, like the agents in Maldonado, Sgt. Kerr responded in a reasonable manner to the exigent circumstances created by James and conducted a limited search to secure the apartment after the tumultuous arrest.[16]  The Court agrees.

The Court finds that Sgt. Kerr's protective sweep of James's apartment was a reasonable law enforcement response to the circumstances created by James's very forcible and unexpected resistance to his arrest, and thus did not infringe upon his Fourth Amendment rights.  Sgt. Kerr entered the defendant's apartment without a warrant only to secure it following the violent exchange that took place during the arrest.  Although there were no assurances, or even clear indications, that other dangerous individuals were present in the apartment, the sweep to ensure against that possibility was legitimate, given James's suspicious, and then hostile, behavior.  Under the totality of the

---

search.  Maldonado, 472 F.3d at 392.

[15] Courts must consider the "totality of the circumstances" facing officers at the time of a sweep.  While "lack of information alone cannot . . . justify a protective sweep," it still may be "permissible even when the agents have no certain knowledge that other individuals are in the house."  Id. at 394-95.

[16] The Government also states that Sgt. Kerr arguably would have been negligent in leaving the apartment unsecured with a weapon inside, as the defense suggests.

circumstances, the officers did possess a reasonable concern that the apartment may have harbored other dangerous subjects, based upon:  1) James's request that the police to remain outside, 2) his abrupt slamming of the living room door, 3) the violent struggle, 4) the presence of the shotgun, and 5) James's calls to unidentified people for help.

Furthermore, Sgt. Kerr's sweep was brief and limited to places of potential concealment.  On balance, the intrusion upon James's already curtailed expectation of privacy as a parolee by such a cursory inspection of James's residence was minimal.  Pursuant to the Fifth Circuit's guidance, the Court affords deference to Sgt. Kerr's informed judgment as an experienced police officer as to his appraisal of the need to act as he did.  In doing so, Sgt. Kerr actually discovered the narcotics coincidentally, and in plain view, after the laundry room door had been opened during the altercation during the arrest.

While those hazards are enough, the five-factor analysis endorsed by the Fifth Circuit also support Sgt. Kerr's decision, as noted above.  In sum, Sgt. Kerr's protective sweep was founded upon a reasonable assessment of the circumstances created by James, and was intended to address a legitimate concern for officer and public safety, which could have been posed by, among other dangers, another hostile subject in the residence.   Applying current precedent, the Court finds that such a protective sweep is a

justifiable exception to the general warrant requirement, and therefore does not offend the fundamental injunction of the Fourth Amendment.

Accordingly, the defendant's motion to suppress evidence is DENIED.

New Orleans, Louisiana, July 2, 2007.

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE

13